(No. 41894.—

Thomas J. Vlahovich, Appellee, *vs.* Betts Machine Co., Appellant.

*Opinion filed June 29, 1970.*

John E. Cassidy, Jr., of Cassidy, Cassidy, Quinn & Lindholm, of Peoria, for appellant.

SMITH & WHITNEY, of Peoria, (LEONARD M. RING, LESTER B. SMITH, and JAMES L. HAFELE, of counsel,) for appellee.

Mr. JUSTICE BURT delivered the opinion of the court:

A jury in the circuit court of Peoria County returned a verdict in favor of the defendant Betts Machine Co. and against the plaintiff, Thomas J. Vlahovich, and judgment was entered on the verdict. The Appellate Court for the Third Judicial District reversed, with one justice dissenting and one justice concurring specially. We granted leave to appeal.

The plaintiff-appellee, Thomas J. Vlahovich, was employed as a truck driver by F. S. Services, and on January 11, 1962, he delivered a cargo to the Knox County Oil Company in the city of Galesburg, Illinois. While checking the clearance lights on the tractor trailer which he was operating, he noticed that the middle clearance light on the right hand side had a burned out bulb. He secured a ladder and climbed up to reach and change the light bulb under the lens. The temperature at that time was 10 or 12 degrees below zero. He climbed up the ladder to a point where the light was at eye level with him. He then inserted a screwdriver in one of the three indentations provided therefor, pried and possibly twisted the screwdriver to remove the acrylic plastic lens. The lens broke and a piece of the lens cut the plaintiff's left eye.

Plaintiff testified that he had changed lenses "lots of times" and that they had broken in the process about six times previously. He further testified that in the shop where the trucks were serviced, they often applied a soap type resin on the ring around the lens to make it easier to remove, such mixture being one that the mechanics used to clean their hands.

He also stated that he had never applied any soap or lubricant while out on the road.

Plaintiff stated that he had not read the instruction sheet for removal and reinsertion of the lens supplied by the defendant, Betts Machine Co., but had seen the directions on the lamp itself.

The second amended complaint, filed March 24, 1966, upon which the issues were tried, charged that the defendant company was engaged in the business of manufacturing and selling, for ultimate sale to the general public, a certain acrylic resin lens, identified as part B-51 of unit B-60 clearance lamp and lock mount. The said clearance lamp featured what is known as the "Warren Snap Seal" which was to hold the lens and the body of the clearance lamp together, and it was alleged that defendant manufacturer issued instructions on the removal of the lens, describing the operation as "inserting a thin-bladed instrument such as a screwdriver between the lens and the body at one of the notches provided in lens and pry open."

The complaint further stated that the lens was installed in the trailer with knowledge that certain members of the public would from time to time be required to remove said lens in order to replace a bulb in said clearance light and that the plaintiff, while following the above mentioned instructions of the defendant and while in lawful possession of the trailer and said clearance light and lens attempted to remove said lens and the lens fractured as he attempted to pry open the lens with a screwdriver under the notch provided for this purpose and a portion of the fractured lens struck his left eye causing injury.

The complaint further charges that the lens was in fact "unreasonably dangerous and had continued being dangerous from the time it left the control of the defendant, Betts Machine Company, a corporation, to the time of plaintiff's injuries herein complained of, in that when used, as aforesaid, and particularly on attempting to remove said lens as directed by the said defendant, the lip of the lens was likely

to shatter, break and fracture and thereby was likely to cause injury."

Plaintiff claims that he was using the lens in the manner intended by the defendant and attempting to follow the instructions provided by the defendant in removing the lens to replace the bulb and that defendant had a duty to design, manufacture and sell said lens so that it was not and did not become unreasonably dangerous when put to the use for which it was designed, manufactured and sold.

It is further charged that as a direct and proximate result of the unreasonably dangerous condition of the lens, from the time said lens left the control of the defendant to the time of the injury complained of, the lens fractured while plaintiff was attempting to remove the lens on January 11, 1962, at about 4:00 P.M., injuring the plaintiff.

Most of the essential facts are detailed in the appellate court opinion. (*Vlahovich* v. *Betts Machine Co.* (1968), 101 Ill. App. 2d 123.) The evidence on trial showed that the defendant had manufactured, assembled, and distributed the B-60 lamps since 1951 and their intended use was to serve the same purpose on truck trailers and other truck type equipment as tail lights do on cars. The lens standards were set by the Society of Automotive Engineers and met the requirements of various commerce commissions and other agencies. From January 1, 1959, through the date of the accident in 1962, defendant had manufactured, assembled and distributed 195,000 B-60 lamp units for the three years ending December 31, 1961, containing substantially the same characteristics, and during that period the president of the company testified he knew of no other complaints of anyone receiving personal injury.

A professor of civil engineering testified for plaintiff that he had examined the lens which cracked and testified as to its tensile strength. He stated that in his opinion, without any resistance to removal, the tensile strain created

from the use of the screwdriver could cause a fracture of the lens, and on cross-examination he said that assuming there was no violation of the instructions on removal "the lack of grease or difficulty in unseating the lens was a contributing cause of the fracture and that the lens would more likely fracture in lower temperature." He found no grease in the "O" ring which surrounded the lens, and which the instructions said was to be lubricated by a light oil or grease.

Another truck driver testified, *without* objection, that he had experienced breakage of this type of lens almost every time he changed one of the lenses and also that on occasion a portion of the lens struck him in the face.

Charles E. Cochran was called as an additional witness for the plaintiff and had begun to testify that he had removed similar lenses which broke and hit him in the face but, after defendant's objection to such testimony, the court refused to allow the witness to testify further.

As pointed out by the appellate court, the plaintiff's theory of liability was that established by the case of *Suvada* v. *White Motor Co.,* 32 Ill.2d 612, where this court stated that the plaintiff must prove three elements to sustain his cause of action on strict liability: 1) the injury or damage resulting from a condition of a product, 2) that the condition was an unreasonably dangerous one, 3) that the condition existed at the time it left the manufacturer's control.

Since this case was taken under advisement by this court the case of *Williams* v. *Brown Mfg. Co., Inc.,* 93 Ill. App. 2d 334, has reached this court and has been decided. (*Ante,* p. 418.) In that case, also involving a theory of strict liability in tort, basically alleging an unreasonably dangerous design in the manufacture of a trenching machine, this court reviewed the development of the law of strict liability in tort in Illinois and other States since *Suvada,* and we found

that since the *Suvada* decision the courts have had difficulty, mostly with terminology, in applying the rule. *Williams* now holds that in Illinois it is not necessary for plaintiff to plead and prove his due care or freedom from contributory negligence. It is further held that "In determining where loss should fall as between the nonnegligent manufacturer, distributor or retailer and the less than careful plaintiff, it has generally been recognized in Illinois and elsewhere that plaintiffs who 'misuse' a product—use it for a purpose neither intended nor 'foreseeable' (objectively reasonable) by the defendant—may be barred from recovery." (Citations). We there held that the action of the trial court in striking the affirmative defense of assumption of the risk was improper because the evidence, which must be taken as a whole on a motion to strike in its aspect most favorable to the opponent, raised questions for the jury. (*Pedrick* v. *Peoria and Eastern R.R. Co.*, 37 Ill.2d 494.) The court further stated that assumption of the risk is an affirmative defense which may bar recovery, and may be asserted in a strict liability action notwithstanding the absence of any contractual relationship between the parties.

In the case at bar the defendant answered the complaint by denying the charges of faulty design but set up no affirmative defense. It did not charge plaintiff with improper use or maintenance, nor did it claim any fault of any other persons. The sole issue then in this case was the question of faulty product design.

Plaintiff complains that the trial court was in error in giving plaintiff's tendered instruction No. 11 only after modification by the court. As submitted by plaintiff, this was I.P.I. Instruction No. 15.01, defining proximate cause, in full as follows:

"When I use the expression 'proximate cause', I mean that cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor

the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]" In the conference on instructions the court asked the plaintiff's attorney what his theory of the case was and he replied that he was standing on faulty design only. The court thereupon deleted the portion of the instruction in brackets, in accordance with the "note on use" of this instruction, shown following the instruction, as suggested by the editors of IPI, which reads, "This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death, (other than acts or omissions of the plaintiff). In cases where there is no evidence of a concurring or contributing cause, the short version without the bracketed material may be used." The trial court further modified the first paragraph of the instruction, by changing "that cause" to "a cause", so that as given Instruction No. 11 of plaintiff read, "When I use the expression 'proximate cause' I mean a cause which in natural or probable sequence, produced the injury complained of."

We note that the court also gave defendant's burden of proof instruction No. 4 over objection, where he stated:

"The plaintiff has the burden of proving each of the following propositions as to the defendant:

First, that his injury resulted from a condition of the plastic lens;

Second, that the condition of the plastic lens was an unreasonably dangerous one;

Third, that the unreasonably dangerous condition of said lens existed at the time it left the defendant's control and was the proximate cause of plaintiff's injury.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff.

But, if, on the other hand, you find from your consideration of all the evidence that any of these propo-

sitions has not been proved, then your verdict should be for the defendant."

Plaintiff does not argue in this court, as he did in the trial court, that the third clause of this instruction was too restrictive.

As was said in the majority opinion of the appellate court (page 126), "The propriety of the instruction tendered and modified depends upon considerations relating to multiple causation. * * * The evidence is sufficient to support four theories of causation, *A*, unreasonably dangerous condition of lens, *B*, failure to follow directions, *C*, maintenance of 'O' ring and *D*, pressure exerted in removing lens. Under the Suvada rule cause *A* must be found to exist but it need not be the sole and only cause."

It is likely that instruction 15.01 of I.P.I. will now need to be reviewed. Both sides here concede that negligence and contributory negligence in the traditional sense are not in issue here.

We are of the opinion that instruction No. 11 of plaintiff, as given, and defendant's instruction No. 4 were unduly restrictive, did not permit the jury to consider the possible concurrent causes in evidence, and did not furnish proper guidance to the jury.

Plaintiff also complains that the trial court improperly cut off the testimony of the witness Cochran, a fellow employee of F. S. Services, as to other similar occurrences of breakage. Plaintiff's attorney asked Cochran, "Is there any particular time that you recall as you sit there now of your attempting to remove this lens?" The witness replied, "Well in January of 1960 down at the terminal I changed the light bulb. I had to pry the lens out and it broke and hit me in the face." At this point objection was made and sustained, whereupon plaintiff's attorney stated, "That's all I have of this witness, your honor."

Evidence of other instances of breakages in cases of this type is admissible. *City of Bloomington* v. *Legg*, 151

514

Ill. 9, 13; *Schusler* v. *Fletcher*, 74 Ill. App. 2d 249; *Gore* v. *Henrotin*, 165 Ill. App. 222, 227. On retrial such testimony should be received if offered.

For these reasons we are of the opinion that the judgment of the Appellate Court, Third District, should be affirmed.

*Judgment affirmed.*