530 P.2d 1136

**Winifred M. JOHNSON and Earl D. Johnson, her husband, Appellants,**

v.

**Carol HARRIS, natural mother of Rodney A. Kidd, Deceased, her minor son, Appellee.**

**No. 2 CA–CIV 1683.**

Court of Appeals of Arizona,
Division 2.

Jan. 24, 1975.

Rehearing Denied Feb. 26, 1975.

Lesher, Kimble, Rucker & Lindamood, P. C. by James C. Carruth, Tucson, for appellants.

Jacob Leon Siken and Richard R. Forcier, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

Plaintiff-appellee brought suit against defendants-appellants to recover for the alleged wrongful death of her seven-year-old son. Denying defendants' motion for a directed verdict, the court submitted the case to the jury, and the jury returned a verdict in plaintiff's favor in the amount of $65,000. Defendants moved for a judgment notwithstanding the verdict which was denied. Defendants' appeal questions whether the trial court erred in refusing to grant a directed verdict for lack of evidence on the issue of proximate cause and whether there was sufficient evidence of misconduct on the part of the jury to warrant the setting aside of the verdict.

Plaintiff's son, Rodney Kidd, drowned in defendants' backyard swimming pool on March 3, 1973. Surrounding the swimming pool was a fence constructed by defendant husband and a neighbor. A portion of the fence was not at least "five feet . . . in height with no openings, holes or gaps larger than five inches . . ." as required by § 26–43 of the Code of the City of Tucson. Instead a portion of the fence was approximately four feet in height with a two by four piece of wood placed at the five feet level, thereby leaving a gap or opening larger than five inches. In addition, one of the gates in the fence was neither self-closing nor self-latching as required by the above Code section.

From the evidence, the jury could have found the following facts. On the day of the drowning, defendants were working, leaving their two teen-age daughters, Diana and Donna, in charge. In the early afternoon, Donna left her residence and went to baby-sit at plaintiff's home. While she was away, several teen-age friends visited defendants' house. Plaintiff had been asked to notify defendants should she see one of those friends, Bobbie Baker, swimming in the pool. When she saw Miss Baker swimming in the pool, plaintiff went to defendants' home, scolded Miss Baker and telephoned defendant; plaintiff's children and Donna accompanied plaintiff. Plaintiff, plaintiff's children and Donna then left, but Donna and plaintiff's

children, except Rodney, returned shortly, Donna argued with Miss Baker and then everyone, except Diana, left defendants' yard. Diana testified that at this time she closed and latched the gate to the back yard. Sometime later Donna returned home long enough to yell at her sister, and then she left through the gate. Between 4:00 and 4:30, Rodney Kidd entered defendants' backyard and drowned. Nobody saw Rodney Kidd enter defendants' backyard. No one saw him fall into the swimming pool. The night of the drowning, Donna apologized to plaintiff for leaving the gate open.

■ To prove actionable negligence one must establish that a duty on the part of the defendant existed to protect the plaintiff, that the defendant failed to perform that duty, and that an injury to the plaintiff was proximately caused by such failure. Defendants admit that the Tucson ordinance establishes the requisite duty and that the two violations of the ordinance establish the required failure to perform that duty. What defendants challenge is the existence of sufficient evidence from which the jury could conclude that either of the two violations could have caused Rodney Kidd's death.

Defendants claim that the court below should have directed a verdict in their favor because plaintiff failed to shoulder its burden of proof on the issue of causation.

"[The plaintiff] must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." W. Prosser, Handbook of the Law of Torts 241 (1971).

[Footnotes omitted].

Accord, Nieman v. Jacobs, 87 Ariz. 44, 347 P.2d 702 (1959); Jasper v. City and County of Denver, 144 Colo. 43, 354 P.2d 1028 (1960).

■ Defendants claim that this case is one in which the probabilities are at best evenly balanced. The evidence could support the conclusion that Rodney Kidd entered defendants' backyard in any one of four ways. First, he could have climbed through that portion of defendants' fence which did not conform with the city code. Second, the youngster could have walked through the defective gate in defendants' fence. Third, he could have climbed over that portion of defendants' fence which met city standards. Finally, he could have climbed over a neighbor's fence and then entered defendants' backyard. If each of these alternatives were evenly balanced, then the judge would have erred in not directing a verdict.

However, a minutia of facts exist which ever so slightly tip the scales and justify the refusal to direct a verdict. For example, before Rodney left his house plaintiff gave him a sandwich to eat; that sandwich was found lying by the side of the swimming pool. It is more likely that he would enter through the gate, if he could, than that he would climb any fence grasping the sandwich or putting it in his pocket. Furthermore, the jury could infer reasonably from human experience that a person will enter an area the easiest way possible, in this case through an open gate. And the evidence can be read to allow the conclusion that the gate was left open.

Defendants dispute this analysis saying first that the jury could not believe that the gate had been left open and second that bruises on Rodney's body indicate that he did not enter through the gate. While it is true that Diana testified that she latched the gate after Donna left, the jury could have found that the gate was latched only after Donna argued with Miss Baker and not after Donna returned to argue with Diana; thus, after Donna left, the gate remained open. Furthermore, Diana's testimony was discredited to a degree, and the jury could have believed that she did not

latch the gate at any time. The fact that Diana's boyfriend, Kirk, heard the gate being unlatched while he was rescuing Rodney does not disprove the hypothesis that Rodney entered through the gate. The testimony was undisputed that the gate was at times self-latching. Thus, it is entirely possible that after Rodney pushed the unlatched gate open to enter the backyard the gate closed and latched itself. We do not believe that the presence of bruises and scratches on Rodney's body tips the scales back into an equilibrium. Those injuries are as consistent with climbing over a fence as they are with climbing through a narrow opening in a fence as they are with the natural struggle in a pool to avoid drowning. Thus the judge was correct in refusing to direct a verdict because the scales of evidence had been tipped barely enough for the jury to find by a preponderance of the evidence that defendants' negligence caused the death of Rodney Kidd.

Defendants' second contention is that the judge should have granted a judgment notwithstanding the verdict because of an affidavit disclosing jury misconduct. On the day after the jury returned its verdict, defendants' counsel was contacted by a juror who had not signed the verdict. Her affidavit alleged that "the verdict was the result of sympathy", that "the subject of homeowner's insurance and probable coverage for the defendants was discussed", that one juror "announced that she had no independent opinion in the matter but that she would simply go along with whatever a majority of the jury wished", that another juror "stated she signed the verdict only to avoid a mistrial being called and the necessity of the plaintiff mother having to endure another trial."

The courts of Arizona are "committed to the rule that 'the affidavit of a juror will not be received to impeach the verdict.'" Wilson v. Wiggins, 54 Ariz. 240, 244, 94 P.2d 870, 871 (1939). Only in the rarest of occasions will this rule be deviated from. See, Board of Trustees Eloy Elemen. Sch. Dist. v. McEwen, 6 Ariz. App. 148, 430 P.2d 727 (1967). Since the affidavit in the instant case reveals privileged communications between jurors, it runs afoul of a fundamental foundation for the rule, does not fall within the McEwen exceptions, and cannot be used to impeach the jury's verdict.

For the above reasons, the judgment of the court below is affirmed.

KRUCKER and HATHAWAY, JJ., concur.