627 P.2d 716

**Leon MOORER, Plaintiff/Appellee,**

v.

**CLAYTON MANUFACTURING CORPORATION, a foreign corporation, Defendant/Appellant.**

**No. 2 CA–CIV 3732.**

Court of Appeals of Arizona, Division 2.

March 2, 1981.

Rehearing Denied April 2, 1981.

Review Denied April 21, 1981.

Haralson, Kinerk & Morey, P. C. by Carter Morey and Gary L. Rohlwing, Tucson, for plaintiff/appellee.

Slutes, Browning, Zlaket & Sakrison, P. C. by Tom Slutes, Tucson, for defendant/appellant.

## OPINION

HOWARD, Judge.

This products liability case resulted in a $35,000 jury verdict in appellee's favor. Appellant contends the trial court erred in (1) not granting its motion for judgment n.o.v. because appellee failed to prove his case under the law set forth in *Brady v. Melody Homes Manufacturer*, 121 Ariz. 253, 589 P.2d 896 (App. 1978); (2) misinstructing the jury; (3) allowing appellee's expert witness to testify; (4) refusing to grant a new trial when the verdict was based on passion and prejudice; (5) refusing to grant a remittitur, and (6) refusing to grant a new trial because of jury misconduct. We find no error and affirm.

Appellee was an employee of Hamilton Test Systems Emission Control Center (Hamilton) which conducts vehicle emission tests for the State of Arizona. The machine used for the test is called a dynamometer and in manufactured by appellant.

The test is conducted by driving the vehicle into the test position, with the rear wheels on a rotating drum. One of the two persons who usually conducts the test enters the vehicle and starts the engine, while the other inserts a probe into the exhaust pipe. This probe is connected to a computer. During testing the vehicle is run at different speeds and the rear tires rotate on the drum.

On the date of the accident, appellee had inserted the probe into the exhaust pipe of a truck. The pipe was located between the front and rear wheels on the driver's side. As the test cycle was proceeding, appellee noticed that the probe had slipped out. When he tried to reinsert it, he was caught in the "nip-point" created by the rotation of the tire and the drum. He was dragged underneath the vehicle and his right arm was trapped and crushed between the tire and the drum. The only way in which his arm could be extracted was by putting the truck into reverse which re-rolled his arm between the tire and the drum. He suffered numerous compound fractures to his arm as a result.

Appellee's theory was that of strict liability for a design defect which consisted of the failure to have a safety guard to prevent his arm from getting caught in the "nip-point" and the failure to provide a device which would have permitted him to extract his arm after it had become trapped without the necessity of re-rolling it between the tire and the drum.

## I

### DID APPELLEE PROVE A STRICT LIABILITY CASE?

In *Brady v. Melody Homes Manufacturer*, supra, the court considered a design defect case. Borrowing from the California case of *Barker v. Lull Engineering Company, Inc.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978), the *Brady* court adopted the *Barker* dual standard for design defect cases. A product is defective in design if the plaintiff demonstrates that the product failed to perform as safely as an ordi-

nary consumer would expect when used in an intended or reasonably foreseeable manner. Design defect under this standard is based on strict liability under the Restatement (Second) of Torts, Sec. 402 A.

A product is also defective in design if the plaintiff proves that the product's design proximately caused his injury and the defendant fails to prove, in light of the relative factors, that on balance the benefits of the challenged design outweigh the risk inherent in such design. *Barker* called it a "risk-benefit" standard. In discussing these standards the *Barker* court stated:

"This dual standard for design defect assures an injured plaintiff protection from products that either fall below ordinary consumer expectations as to safety, or that, on balance, are not as safely designed as they should be. At the same time, the standard permits a manufacturer who has marketed a product which satisfies ordinary consumer expectations to demonstrate the relative complexity of design decisions and the trade-offs that are frequently required in the adoption of alternative designs. Finally, this test reflects our continued adherence to the principle that, in a product liability action, the trier of fact must focus on the *product*, not on the *manufacturer's conduct*, and that the plaintiff need not prove that the manufacturer acted unreasonably or negligently in order to prevail in such an action." 20 Cal.3d 413, 143 Cal.Rptr. 222, 573 P.2d at 446–47.

■ Whereas *Barker* held that the "risk-benefit" standard also sounds in strict liability, *Brady* held that it does not and stated that it is based on standards of negligence.[1] We need not state here whether we agree with this apparent retreat from the doctrine of strict liability since we believe that the facts here establish the applicability of strict liability under the first standard. The failure to include safety devices at the "nip-point" can constitute a defective condition unreasonably dangerous

to the user or consumer. See *Union Supply Company v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978). We are unable to agree with appellant's contention that this was a negligence case and that appellee did not sustain his burden of proof because he failed to prove negligence. Neither do we agree with appellant's contention that appellee did not sustain his burden of proof since no one testified that the machine failed to perform as safely as an ordinary consumer would reasonably expect it to when the product was being used in an intended or reasonably foreseeable manner. Appellee's expert witness testified that the "nip-point" made it hazardous. The jury saw pictures of the machine and heard testimony describing how the emissions control test was performed and how the accident happened. Whether the design there satisfied the strict liability standard was a question of fact for the jury. See *Byrns v. Riddell, Incorporated*, 113 Ariz. 264, 550 P.2d 1065 (1976). Cf. *Union Supply Company v. Pust*, supra.

■ Appellant contends that the open and obvious lack of safety devices precludes the invocation of the doctrine of strict liability. Its reliance on *Vineyard v. Empire Machinery Company, Inc.*, 119 Ariz. 502, 581 P.2d 1152 (App. 1978), is misplaced. *Vineyard* is factually distinguishable. The open and obvious nature of a defect is only *one* of the factors to be considered and is not controlling. *Byrns v. Riddell*, supra.

## II

### THE MULTIPLE CAUSATION INSTRUCTION

■ During the trial appellant attempted to shift the blame to Hamilton, arguing that it failed to properly train appellee and that this negligence was the proximate cause of appellee's injuries. This prompted appellee to request and receive, over appellant's objection, the following jury instruction:

[1]. Alaska has adopted *Barker* and refused to reinstate negligence terminology into design defect cases. See *Caterpillar Tractor Company v. Beck*, 593 P.2d 871 (Alaska 1979); *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059 (Alaska 1979).

"More than one person may be liable for causing an injury. A defendant may not avoid liability by claiming that some other person helped cause the injury."

Appellant contended below that the instruction was erroneous because there cannot be multiple causation in a strict liability case. We do not agree. Product defectiveness can be a proximate cause concurrently and in combination with other causes. *Vlahovich v. Betts Machine Company*, 101 Ill. App.2d 123, 242 N.E.2d 17 (1968), aff'd 45 Ill.2d 506, 260 N.E.2d 230 (1970). The instruction was appropriate in view of appellant's trial tactics.

■ Appellant also suggests that the alleged negligence of Hamilton was a superceding, intervening cause precluding the giving of the above instruction. We need not decide the applicability of this theory in relation to a strict liability case nor its applicability in the factual setting of this case since it was not specified in the trial court as a ground for its objection to the instruction. Rule 51(a), Arizona Rules of Civil Procedure, 16 A.R.S.; *Hurvitz v. Coburn*, 117 Ariz. 300, 572 P.2d 128 (App. 1977).

### III

### THE "STATE OF THE ART" INSTRUCTION

One of the appellant's expert witnesses was allowed to testify that with regard to protective devices, the dynamometer conformed to the "state of the art" at the time it was manufactured. At first appellee objected to this testimony but the objection was withdrawn when it was pointed out that A.R.S. Sec. 12–683(1) allows such testimony as an affirmative defense. When appellee later realized that the statute did not apply to causes of action accruing prior to the effective date of the act, such as was the case here, he succeeded in having the trial court instruct the jury that "state of the art" was not a defense.

■ Appellant contends that the giving of this instruction was erroneous since A.R.S. Sec. 12–682 preserves the common law of products liability except as specifically modified by the act. It asserts there was no common law in Arizona on "the state of the art" prior to the act and cites cases from other jurisdictions which allow the defense in products liability cases. Appellant is in error as to the state of the law in Arizona prior to the enactment of our new products liability statutes. The "state of the art" defense was rejected by this court in *Wagner v. Coronet Hotel*, 10 Ariz. App. 296, 458 P.2d 390 (1969) and again in *Lunt v. Brady Manufacturing Company*, 13 Ariz.App. 305, 475 P.2d 964 (1970). A.R.S. Sec. 12–683(1) has changed this law but is not applicable to this case and the trial court did not err in its instruction.

### IV

### EXPERT WITNESS TESTIMONY

■ Appellant next contends that the trial court erred in allowing Alan Milner, an engineer, to testify as an expert witness because he had never designed a dynamometer. We do not agree. Whether a witness is competent to testify as an expert is a matter for the sound discretion of the trial court and we will not overrule its decision unless there is a clear abuse of discretion. *Englehart v. Jeep Corporation*, 122 Ariz. 256, 594 P.2d 510 (1979). The evidence given by the expert witness in this case concerned the application of mechanics and physics which would be within the expertise of someone with an engineering degree.

### V

### DAMAGES

■ Appellant contends that since the special damages, i. e., medical expenses and lost wages, amounted to only $6,000 the verdict of $35,000 was a result of passion and prejudice. In its brief appellant states:

"* * * The mere ratio of the amount of the verdict to the amount of actual damages is such as to show that the verdict could only have been reached by a jury inflamed with passion and prejudice."

This argument is without merit. There is no magic formula which tests the excessiveness of damages nor any rule-of-thumb ratio such as appellant suggests. The amount of special damages proves only one thing, the amount of special damages. Each case turns on its own facts. Appellee's arm was crushed by the machine. He is permanently scarred by surgery, his little finger is deformed and his arm is limited in its range of motion. The damages were not excessive and the court did not err in refusing to grant a new trial or grant a remittitur.

## VI

### JURY MISCONDUCT

In its motion for a new trial, appellant attached the affidavits of two of the jurors which it claims shows the verdict was a quotient verdict. It contends the trial court erred by failing to grant a new trial on this ground. We do not agree. While quotient verdicts are improper, the trial court cannot receive testimony from a juror, whether by affidavit or orally, to impeach the verdict. *Wasko v. Frankel*, 116 Ariz. 288, 569 P.2d 230 (1977); *Gorski v. J. C. Penney Company*, 103 Ariz. 404, 442 P.2d 851 (1968); *Hull v. Larson*, 14 Ariz. 492, 131 P. 668 (1913); *Johnson v. Harris*, 23 Ariz. App. 103, 530 P.2d 1136 (1975); Rule 606(b), Arizona Rules of Evidence.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.