641 P.2d 258

Laura Lee KAVANAUGH, a minor, by and through her guardian and conservator, R. Carmeletta Cohrt, Plaintiffs-Appellees,

v.

Michael KAVANAUGH and Francine L. Kavanaugh, individually and as guardian ad litem for Jimmy Kavanaugh, a minor, Defendants-Appellants.

Laura Lee KAVANAUGH, a minor by and through her guardian and conservator, R. Carmeletta Cohrt, Plaintiffs-Appellants,

v.

SOUTHLAND MOWER CO., INC., an Alabama corporation; Globe Discount City of Arizona, Inc., an Arizona corporation; Walgreen Arizona Drug Co., an Arizona corporation, Defendants-Appellees.

No. 1 CA–CIV 4812.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 22, 1981.

Rehearing Denied Feb. 2, 1982.

Review Denied March 3, 1982.

Hofmann, Salcito & Stevens, P. A., by Daniel R. Salcito and Michael L. McAllister, Phoenix, for plaintiff-appellee Laura Lee Kavanaugh.

Gust, Rosenfeld, Divelbess & Henderson, by Richard A. Segal, Phoenix, for defendants-appellants Kavanaugh.

Burch, Cracchiolo, Levie, Guyer & Weyl, P. A., by Daniel Cracchiolo and Weyl, Guyer, MacBan & Olson, by Thomas G. Bakker, Phoenix, for Southland Mower Co., Globe Discount City of Arizona and Walgreen Arizona Drug Co.

OGG, Judge.

The plaintiff, Laura Lee Kavanaugh (Laura), who was five years of age at the time of the accident, suffered a partial amputation of her left foot in an incident involving a family-owned power lawn mower. The lawn mower was being operated by her brother, James, who was nine years old. After the accident, a guardian was appointed, who filed an action on Laura's behalf against defendants Southland Mower Co., Inc. (the manufacturer), Globe Discount City of Arizona, Inc., and Walgreen Arizona Drug Co. (the sellers), Michael Kavanaugh and Francine Kavanaugh (parents), and James Kavanaugh (brother).

The theory for recovery against the manufacturer and sellers was strict liability in tort based on Restatement, Second, Torts § 402 A. The allegations in the complaint relevant to this appeal are that the lawn mower was defectively designed and that there was a failure to adequately warn of dangerous propensities in the lawn mower.

The case was tried to a jury, and at the close of plaintiff's case, the court directed a verdict in favor of the manufacturer and the sellers on the issue of defective design. The issue of failure to warn was submitted to the jury, and a verdict was returned in favor of the plaintiff for $92,000. The plaintiff filed a motion for an additur which was denied. The defendants manufacturer and sellers filed a motion for judgment notwithstanding the verdict which was granted on the basis that the lawn mower was being misused at the time of the accident.

As to the strict liability action against the manufacturer and sellers, the plaintiff on appeal alleges error by the court in the denial of her motion for additur; error in directing a verdict on the issue of defective design; and error in granting the judgment notwithstanding the verdict on the failure to warn issue.

The plaintiff also in the same action sued her parents and brother James, alleging her injury was caused by their negligence. The jury rejected such claim and found in favor of her parents and brother. The trial court granted the plaintiff a new trial on this negligence claim and her parents and brother now appeal that order.

To facilitate analysis of this rather involved appeal, we will first consider Laura's appeal as to the claim against the manufacturer and sellers of the lawn mower, and then consider the appeal by the parents and brother from the trial court order granting Laura a new trial on her negligence claim against her family.

## I. LAURA'S CLAIM AGAINST THE MANUFACTURER AND SELLERS

The Southland lawn mower is a self-propelled machine. It is equipped with a set of turning rollers which come into contact with the rear wheels. The rollers are part of the rear drive housing and are turned by a belt off the lawn mower's gas engine. The rotating action of the rear drive rollers on the rear wheels propels the lawn mower forward. The rear drive housing pivots up and down at the rear end of the lawn mower. When the drive housing is up, the rollers are not in contact with the rear wheels and thus the self-propelled mechanism is disengaged. The mechanism is engaged and the lawn mower moves forward when the drive housing is down and the rollers contact the rear wheels.

There are two manners in which the self-propelled mechanism can be disengaged. A lever on the lawn mower's handle, called a "lockout arm", pulls the drive housing with the rollers away from the rear wheels. The second manner involves simply pushing down on the lawn mower's handle bars. This action creates leverage which causes the drive housing to rise up off the back wheels. After being disengaged in this manner, the evidence showed that the drive housing will remain disengaged without further pressure on the handle bars.

Dr. Stanley Chen, a mechanical engineer testifying as Laura's expert witness, stated that due to the resisting force of the rollers, the lawn mower could not be started while the drive housing was in the down position with the rollers on the rear wheels. Dr. Chen further testified that if the lawn mower is started after disengaging the drive housing by pushing down the handle bars without using the lockout arm, the vibration of the engine will cause the handle bars to spring back up, engaging the self-propelled mechanism and causing the lawn mower to take off by itself.

Viewing the evidence in a light most favorable to Laura, *Lerner v. Brettschneider*, 123 Ariz. 152, 598 P.2d 515 (App.1979), the facts are as follows:

The accident occurred on August 20, 1971, when Laura and James Kavanaugh were five and nine years old, respectively. Their testimony seven years later in September of 1978 is understandably vague. Mr. John Moran, a friend of the Kavanaugh family, had Laura and James re-create the accident in September of 1971. His testimony described the accident as re-created by Laura and James. The day before the accident, Patrick Kavanaugh, Laura's brother, was using the lawn mower to cut a neighbor's lawn. James was helping by doing the trimming. While Patrick was mowing the lawn, the lockout arm broke. James testified that he was aware that "the safety catch had broke."

The facts surrounding the actual accident are in dispute. The testimony of Mr. Moran, however, was sufficient to justify findings by the jury that, on the day of the accident, James asked his mother if he could mow a strip of grass in his parents' backyard and that she gave him permission to do so; that James asked his sister to sit on the lawn mower to steady it while he started it; that the lawn mower took off by itself immediately after being started; that Laura jumped off in front of the lawn mower and fell down while attempting to run away; and that the lawn mower ran over her foot approximately ten to twelve feet from the point where the machine was started.

The issues of defective design and failure to warn come before us in an unusual posture. The majority of Laura's evidence concerned the issue of defective design. Three expert witnesses gave their opinion that the design of the mower which enabled an operator to start it by pushing down on the handle made it defective and dangerous. At the close of Laura's case, the trial court granted a motion for directed verdict in favor of the defendants manufacturer and sellers in regard to the issue of defective design. The court denied the defendant's motion for directed verdict concerning the issue of lack of warning. The defendants presented their case to the jury relative to the issue of lack of warning and the jury returned a verdict in favor of Laura for $92,000. Laura's motion for an additur was denied. The defendants manufacturer and sellers filed a motion for judgment notwithstanding the verdict. The trial court granted this motion on the grounds that the lawn mower was being misused as a matter of law, and that defendants were not responsible for injuries occurring or arising out of the unforeseeable misuse of the product.

On appeal, Laura contends that the trial court erred in granting the motion for judgment notwithstanding the verdict on the issue of failure to warn because, even if the lawn mower was being misused by James and Laura, such use was reasonably foreseeable. Laura also argues that the court erred in granting the motion for directed verdict on the issue of defective design because there was sufficient evidence to war-

rant submission of this issue to the jury. She contends that by removing the evidence of defective design from the jury's consideration, the size of the verdict was reduced. She contends that this supports her motion for an additur. Accordingly, she asks this court to reinstate the jury's verdict and grant her an additur.

The manufacturer and sellers contend that the lawn mower was being misused as a matter of law. They allege that James and Laura were using the lawn mower as a riding toy after the lockout arm was broken. They contend that this misuse was unforeseeable in that they could not have foreseen that Laura's parents would permit this type of use by such young children. They further contend that they owed the users of the lawn mower no duty to warn of the dangers of its use because such dangers were already known to the users. Their final argument is that the alleged failure to warn was not the proximate cause of the accident because the use of the lawn mower after the lockout arm had been broken constituted the proximate cause of the accident.

## A. THE JUDGMENT NOTWITH-STANDING THE VERDICT

We will first discuss the judgment notwithstanding the verdict granted by the trial court after the jury returned a verdict for Laura based on the manufacturer's and sellers' failure to adequately warn of the dangers involved in operating the lawn mower.

■ A duty to warn may be imposed on a manufacturer under strict liability principles if without a warning his product would be in a defective condition unreasonably dangerous to the user or consumer, that is, dangerous to an extent beyond that contemplated by the ordinary consumer with the ordinary knowledge common to the

community as to its characteristics. *Shell Oil Company v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271 (App.1978); Restatement, Second, Torts § 402A, comments i and j. Under § 402A, products though faultlessly made, may nevertheless be deemed "defective" if it is unreasonably dangerous to place the product in the hands of the user without a suitable warning. *Embry v. General Motors Corp.*, 115 Ariz. 433, 565 P.2d 1294 (App.1977).

■ In our opinion, the evidence would justify the jury's conclusion that the lawn mower was in an unreasonably dangerous condition due to the failure to warn that the lawn mower could become both operative and mobile regardless of the use of the lockout arm. We will now discuss those defenses which the manufacturer and sellers have raised.

## MISUSE DEFENSE

■ It is now well settled that one who manufacturers or sells a product has a duty not only to warn of dangers inherent in its intended use, but also to warn of dangers involved in a use which can be reasonably anticipated. 1 Frumer and Friedman, Products Liability, § 15.01 (1976).

The trial court granted the defendants' motion for judgment notwithstanding the verdict on the grounds that the lawn mower was being misused as a matter of law and that such misuse was unforeseeable to the defendants. The defense of misuse is an accepted defense in Arizona. It has been defined as a use of a product "for certain purposes or in a manner not reasonably foreseen by the manufacturer." *O. S. Stapley Company v. Miller*, 103 Ariz. 556, 561, 447 P.2d 248, 253 (1968).

■ The case law on the defense of misuse is not well established in Arizona. We find the following to be a correct statement of the law: [1]

\* \* \* \* \* \*

3. The proximate cause of the incident giving rise to the action was a use or consumption of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable

1. We note that A.R.S. § 12–683, inapplicable to the present case, discusses the misuse defense as follows:

In any product liability action, a defendant shall not be liable if the defendant proves that any of the following apply:

Clearly, if the proximate or legal cause of the injury is the plaintiff's misuse, and not a defect in the product, there is no liability. But when the misuse of the product combines with a defect to cause the injury, the mere fact that the product was not being used in a manner contemplated by the manufacturer will not necessarily bar recovery. The correct rule would seem to be that a use of the product for a purpose, or in a manner neither intended nor reasonably foreseeable will bar recovery. However, some abnormal, or unintended uses will not constitute a legal misuse of the product, if they are reasonably foreseeable. This is ordinarily a question of fact for the jury, unless reasonable minds could not differ.

W. Kimble and R. Lesher, *Products Liability,* § 244 at 270 (1979).

It is established in other jurisdictions that the question of whether a use or misuse is reasonably foreseeable is ultimately a question of fact for the jury. *See Kerns v. Engelke,* 76 Ill.2d 156, 28 Ill.Dec. 500, 390 N.E.2d 859 (Ill.1979); *Olson v. A. W. Chesterton Co.,* 256 N.W.2d 530 (N.D.1977). In *Kuziw v. Lake Engineering Co.,* 586 F.2d 33 (7th Cir. 1978), the United States Court of Appeals, Seventh Circuit, was faced with a situation not unlike that presented to this court. The trial court had granted the defendant manufacturer's motion for judgment notwithstanding the verdict on the grounds of improper use of the subject machine. The court of appeals, interpreting Illinois law, found that the jury could have concluded, as they did, that the machine manufacturer could have foreseen the use to which the machine was put. Accordingly, the trial court erred in substituting its own concepts of foreseeability to nullify the jury verdict that was supported, on the foreseeability issue, by expert evidence adduced at trial. The court stated that "[w]henever there is a doubt as to the foreseeability of a particular use, whether the maker should have anticipated such use is an issue of fact." 586 F.2d at 35.

In the present case, three expert witnesses testified on behalf of Laura and others testified on behalf of the manufacturer and sellers. Dr. Chen testified that it should be foreseeable to the manufacturer that the subject lawn mower would be started by depressing the handle bars and, after being started in this manner, that the lawn mower could be propelled forward on its own. The jury was shown a film depicting these consequences. Mr. Allen Ivey, testifying as the manufacturer's expert, tested a new prototype of the subject lawn mower. He stated that one can start the mower after depressing the handle and that after starting the lawn mower in this manner, the handle will flip up into the self-propelled position. Dr. Joseph K. Davidson, a mechanical engineer testifying as Laura's expert witness, stated that the feature of the self-propelling mechanism that permits it to become self-engaging on its own under certain situations is something that the manufacturer would be able to anticipate or foresee, and that the manufacturer should foresee that sometime during the life of the lawn mower such an event is going to take place and that an accident is likely to result. Both Edward J. Horkey, a mechanical engineer testifying as the manufacturer's expert witness, and Bruce L. Peake, President of Southland Mower, testified that they were aware that children use such mowers. Mr. Peake testified that if parents were going to allow their children to operate the lawn mower, then the manufacturer would want to warn the parents of the dangers of the lawn mower so that the parents could adequately warn their children.

■ When reviewing a judgment notwithstanding the verdict, this court must consider the evidence in a light most favorable to sustaining the jury's verdict to determine whether the evidence would permit a reasonable person to reach the verdict. If there is any substantial evidence from

---

or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person

knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings.

which reasonable persons could have found the ultimate facts to be such as to sustain the verdict, the motion for judgment notwithstanding the verdict should be denied. *Lerner v. Brettschneider, supra; Ross v. Duke*, 116 Ariz. 298, 569 P.2d 240 (App. 1977); *Bond v. Cartwright Little League, Inc.*, 112 Ariz. 9, 536 P.2d 697 (1975).

■ Considering the evidence in a light most favorable to sustaining the jury's verdict, the jury could have found that the children were not using the mower as a riding toy, but rather that Laura got on the lawn mower to help James start it; that Laura became frightened when the lawn mower became mobile; that she jumped from the lawn mower and fell; and that the lawn mower continued to move, running over her foot. The jury could have further found, as they did, that the manufacturer could have foreseen the use to which the lawn mower was put. While the evidence was conflicting, this court, and consequently the trial court, cannot say as a matter of law that such a fact situation constituted an unforeseeable misuse of the lawn mower. The jury was adequately instructed on the issue of misuse and the jury's obvious rejection of this defense under the facts presented was not, as a matter of law, error. The trial court erred in granting the judgment notwithstanding the verdict on the grounds of misuse.

## ASSUMPTION OF RISK DEFENSE

■ The manufacturer and sellers' second argument is that there is no duty to warn of those dangers that are known to the user, or are obvious to him, or are so commonly known that it can reasonably be assumed that the user will be familiar with them. *See Mather v. Caterpillar Tractor Corporation*, 23 Ariz.App. 409, 533 P.2d 717 (1975). This argument is founded in Restatement, Second, Torts § 402A, Comment n, which states in pertinent part:

> If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

To bar recovery under this theory, commonly known as assumption of risk, we must ask whether the users discovered the defect, became aware of the danger presented by such defect, and nevertheless proceeded to unreasonably use the lawn mower in the face of such danger. It is clear that the users here had discovered the alleged defect of being able to start the lawnmower by pushing down on the handle bars, thereby bypassing the lockout arm. The question thus becomes whether the users were aware of the danger presented in starting the lawn mower in this manner.

The manufacturer and sellers rely on the following testimony of James Kavanaugh to establish that the dangers were known to him:

Q. Do you remember anything about you and Patrick cutting the lawn over at McKinnons across the street the day before Laura got hurt?

A. Yes.

Q. Did anything go wrong with the lawn mower over at McKinnons that day?

A. The catch broke.

Q. What do you mean?

A. The safety catch, that thing right there (indicating).

Q. That is the thing that holds it in neutral, so to speak? ·

A. Yes.

Q. That broke over there?

A. Yes.

Q. What difference did that make to the running of the mower?

A. It holds up that thing so it won't go down and spin the wheel.

Q. So when it was broke what happened?

A. It just stayed down.

Q. Did that mean it would push itself or it wouldn't push itself?

A. It would.

This testimony does establish that James was aware that if the lockout arm on the lawn mower was broken, it would not oper-

ate to hold the self-propelled mechanism up. We cannot say as a matter of law, however, that this testimony established James' awareness of the danger of starting the lawn mower in the manner in which it was started. This is a question that should have been left to the trier of fact.

## PROXIMATE CAUSE DEFENSE

Concerning the argument that any lack of warning was not the proximate cause of the accident, the manufacturer and sellers rely on *Rogers v. Unimac Co., Inc.*, 115 Ariz. 304, 565 P.2d 181 (1977). In *Rogers*, the plaintiff was injured when he stuck his arm inside a commercial laundry machine to stop the spinning cylinder from spinning. The machine was equipped with a brake which would stop the cylinder from spinning within ten seconds. The brake, however, had become inoperative and the plaintiff was stopping the spinning cylinder by pressing down on the cylinder's hub with a towel when he was injured. One of the plaintiff's theories was that the machine manufacturer should have placed a warning on the machine of the hazard of reaching into the spinning cylinder. Our supreme court said that it was not necessary to determine whether lack of warning caused the machine to be unreasonably dangerous because the lack of warning was not the proximate cause of the injury.

In holding that the lack of warning was not the proximate cause of the accident, the *Rogers* court relied on the testimony of the plaintiff that, had the brakes been operative, he would not have reached into the spinning cylinder as he did. Thus the court held that the failure to maintain the brakes, not the failure to warn of the danger, was the proximate cause of the accident. The court stated that the machine presented no unreasonable danger of injury as long as it was properly maintained.

In the present case, the manufacturer and sellers contend that the use of the lawn mower after the lockout arm became inoperative, not any failure to warn, was the proximate cause of the accident.

Laura contends that the ability to bypass the lockout arm in starting the lawn mower presented an unreasonable risk of danger even if the lockout arm was fully operable. She further contends that the lack of warning was a proximate cause of the accident because, if there had been an adequate warning of the possibility that the lawn mower might take off on its own under certain circumstances, the lawn mower would not have been available to the children. She presented the following testimony of her father in support of this position:

Q. Mr. Kavanaugh, if you had known in December of 1970, when you purchased this mower, that it had a propensity of going forward after it had been started with a broken lockout arm, or with the lockout arm in running position, or in some way inoperative, would you have purchased the mower?

A. No.

We find that Laura's argument was sufficient to raise a question in the minds of reasonable persons as to whether the failure to adequately warn was a proximate cause of this accident.

The United States Court of Appeals, Fourth Circuit, in regard to the adequacy of a warning label, stated:

[H]ad the words used [in the warning] been reasonably calculated to convey a conception of the true nature of the danger, this mother might not have left the product [furniture polish] in the presence of her child. Indeed, she might not have purchased the product at all . . . .

*Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 87 (4th Cir. 1962).

Laura presented expert testimony that there should be warnings on the lawn mower itself that it should not be started with the self-propelled mechanism engaged. Lack of such warnings would constitute a violation of standards promulgated by the American National Standards Institute. There was further expert testimony that such warnings would be inadequate unless the user was informed of what results might occur if the lawn mower was started with the self-propelled mechanism engaged.

Mr. Peake testified that a pressure sensitive mylar decal is generally placed on each self-propelled lawn mower. Such decal reads:

Caution—Before Starting Engine, Be Certain Clutch Control Is In Neutral & Lock-Out Arm Engaged.

The subject lawn mower had no such decal attached to it when it was introduced as evidence at trial. Michael Kavanaugh testified that he couldn't remember ever seeing such a decal on the lawn mower.

■ What constitutes the proximate cause of an injury in a particular case is a question of fact to be determined from all the surrounding circumstances, and can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. *Brand v. J. H. Rose Trucking Company*, 102 Ariz. 201, 427 P.2d 519 (1967).

Division Two of this Court has stated that "[p]roduct defectiveness can be a proximate cause concurrently and in combination with other causes." *Moorer v. Clayton Manufacturing Corporation*, 128 Ariz. 565, 627 P.2d 716 (1981).

■ This Court does not have, as the *Rogers* court did, the testimony of the user that he would not have bypassed the safety device if it had been operable. Thus we cannot say that the facts are undisputed and that there can be no difference in the judgment of reasonable men as to the references to be drawn from them. We cannot say as a matter of law that the use of the lawn mower after the lockout arm had broken was the sole proximate cause of the injury. The jury could have found that the failure to adequately warn of the dangers inherent in bypassing the lockout arm was a concurrent factor in causing the injury. Thus the question of proximate cause is one that should have been left to the jury under the appropriate instructions.

Viewing the evidence in a light most favorable to sustaining the jury's verdict, we find that the evidence presented before the jury was sufficient to cause reasonable minds to differ on the question of whether the manufacturer owed a duty to warn the users of the dangers inherent in its use, whether such duty was adequately discharged, whether the use to which the lawnmower was put was reasonably foreseeable to the manufacturer, whether the danger was known to the users, and whether the lack of adequate warning was the proximate cause of the accident causing the injury to Laura. Accordingly, we find that the trial court erred in granting the judgment notwithstanding the verdict.

## B. THE DIRECTED VERDICT

Laura contends that the trial court erred in directing a verdict on the issue of defective design. She contends that, by depriving the jury of consideration of the evidence on defective design, the trial court reduced the size of the verdict. Accordingly, she asks this court to grant her demand for additur.

■ It is well settled that a motion for directed verdict admits the truth of all competent evidence introduced by the party opposing the motion, including all reasonable inferences to be drawn therefrom. Such evidence must be viewed most strongly against the movant and most favorably for the opposition. If, considering all the facts and circumstances, there is a reasonable likelihood that reasonable persons may reach different conclusions, the question of fact in issue is to be decided by the jury. *Reader v. General Motors Corp.*, 107 Ariz. 149, 483 P.2d 1388 (1971); *Byrns v. Riddel, Incorporated*, 113 Ariz. 264, 550 P.2d 1065 (1976).

■ In the present case, there was expert testimony that the lawn mower was defectively designed in the manner in which it could become self-propelled and move forward on its own. There was expert testimony that the lawn mower was unreasonably dangerous in the manner in which the lockout arm can be bypassed. There was also expert testimony presenting alternative designs which would prevent the lawn

mower from being defective and unreasonably dangerous. We find that the evidence presented, when viewed in a light most favorable to Laura, warranted submission of the issue of defective design to the jury. We agree that it was error for the trial court to direct a verdict in favor of appellees.

Laura bases her claim for an additur on this error. While she may have multiple theories of recovery, she has suffered only one injury and is entitled to only one verdict. We know of no theory and Laura has cited no support for the proposition that the combination of legal theories of recovery may enhance a single injury verdict.

The question of additur is left to the greatest possible discretion of the trial court, and its decision will not be disturbed on appeal unless a manifest abuse of discretion appears. *Bond v. Cartwright Little League, Inc., supra; Creamer v. Troiano*, 108 Ariz. 573, 503 P.2d 794 (1972). The verdict was within the range of damage evidence presented. While the trial court erred in directing a verdict on the theory of defective design, that error, insofar as an additur is concerned, was harmless. Because Laura does not request other relief in regard to this error, we decline to further discuss this issue.

## II. LAURA'S CLAIM AGAINST HER PARENTS AND BROTHER

The Kavanaughs (parents and brother) argue that the court erred in granting Laura's motion for a new trial on her negligence claim against them. They contend that the order for new trial does not comply with the mandatory requirement of Rule 59(m), Arizona Rules of Civil Procedure, 16 A.R.S., that the order specify with particularity the grounds relied on in the granting of the new trial. Rule 59(m) reads: "No order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted."

The contested order entered by the trial court reads as follows:

NOW THEREFORE IT IS ORDERED granting the motion of plaintiff Laura Lee Kavanaugh, a minor, for a new trial against the defendants Michael Kavanaugh, Francine L. Kavanaugh and Jimmy Kavanaugh, on the grounds that the verdict is not justified by the evidence. Order and judgment, January 4, 1979.

It is clear that the order as entered failed to specify with particularity why the verdict was not justified by the evidence.

The Kavanaughs argue that the noncompliance of the order for new trial with the specificity requirements of Rule 59(m) raises a presumption that the jury's verdict was correct. The burden is then shifted to the appellee, Laura, to show that the order was not erroneous.

Laura argues that the appellants Kavanaughs have waived any defects in the deficiency of the order for new trial when they failed to request greater specificity in the order. Laura further argues that in any event the probative force of the evidence was sufficient to bring the trial court's sound discretion into play.

The Arizona rule to be followed in an appellate review of a trial court's order granting a new trial has vacillated through the years and remains very difficult to apply to specific factual situations. *See General Petroleum Corp. v. Barker*, 77 Ariz. 235, 269 P.2d 729 (1954); *Cano v. Neill*, 12 Ariz.App. 562, 473 P.2d 487 (1970). The most recent pronouncement of such a rule was made by the Arizona Supreme Court in *Reeves v. Markle*, 119 Ariz. 159, 579 P.2d 1382 (1978), which vacated the opinion of Division Two of the Court of Appeals, 119 Ariz. 170, 580 P.2d 2 (App.1977). In that case the court stated that "the burden which is placed on the appellee when a new trial order fails to satisfy Rule 59(m) is to demonstrate that the probative force of the evidence was sufficient to bring the trial court's sound discretion into play." 119 Ariz. at 164, 579 P.2d at 1387.

In *Reeves*, the court cited with approval the rule set down in *Yoo Thun Lim v. Crespin*, 100 Ariz. 80, 411 P.2d 809 (1966), that when a trial court fails to satisfy the

specificity requirement of Rule 59(m), the appellee has the burden on appeal to convince the appellate court that the trial court did not err in ordering a new trial. As a guideline to appellate review in such cases, the court stated as follows: "In performing this duty, we inquire whether substantial evidence exists to support the trial court's determination." 119 Ariz. at 164, 579 P.2d at 1387.

Applying such guideline to the facts of this case, we have examined the record and find that substantial evidence exists to support the trial court's order granting a new trial relative to the negligence claim against the parents and brother.

The children had been allowed to be around the power lawn mower when it was being used, and on the day of the accident, the mower was left out in the back yard readily available to the children. There is testimony, although conflicting, that on the day of the accident, James, who had just turned nine years of age, asked his mother if he could mow the lawn, and she had given her permission. Mrs. Kavanaugh did not supervise the mowing and did not go out to the back yard until she was advised of the accident. It would appear from these facts that there was substantial evidence that Mrs. Kavanaugh was negligent in allowing James to use the power lawn mower and in her failure to supervise the activities of her children. There is substantial evidence that James was negligent in attempting to operate the power lawn mower which he knew to be a dangerous instrumentality. He was further negligent in soliciting his five year old sister to get on the mower and participate in the mowing activity.

We find that appellee Laura Kavanaugh has carried the burden of showing there was substantial evidence to support the trial court order granting a new trial on Laura Kavanaugh's negligence claims against her parents and brother James.

The order granting a new trial on the negligence issue against Laura's parents and brother is affirmed. The judgment notwithstanding the verdict granted to the manufacturer and seller on the issue of failure to warn is reversed, and the matter is remanded to the trial court for entry of judgment on the verdict in regard to this issue.

DONOFRIO, Judge (Retired), and JACOBSON, J., concur.