695 P.2d 284

**B. Michael McKINLEY,**
**Plaintiff-Appellant,**

v.

**TOWN OF FREDONIA, a municipal corporation; Robert Harris; Darol Heaton; Anthony A. Judd; Dixie Lee Judd and Don Mackelprang, individually and as Mayor and Councilmen of the Town of Fredonia, Defendants-Appellees.**

**No. 1 CA–CIV 6522.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 24, 1984.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Richard McC. Shannon, Brian C. Bond, Larry L. Smith, Phoenix, for plaintiff-appellant.

Jennings, Strouss & Salmon by Diane K. Geimer, Stephen E. Crofton, David J. Estes, Phoenix, for defendants-appellees.

## OPINION

KLEINSCHMIDT, Judge.

B. Michael McKinley, former marshal of the Town of Fredonia, Arizona, brought this action against the town to recover compensation for overtime he alleged he had worked during his employment. At the close of all the evidence, the trial court directed a verdict in favor of the town. On appeal we must determine whether the trial court erred in holding that McKinley was limited to taking compensatory leave and had forfeited any compensatory time he may have accumulated by voluntarily resigning.

The facts material to the issues on appeal, viewed most favorably to McKinley,

*Kavanaugh v. Kavanaugh*, 131 Ariz. 344, 641 P.2d 258 (App.1981), are as follows. The town hired McKinley as its marshal in December of 1976. At his initial interview with the town council, he was told that the person who was hired for the job would work a forty-hour week and should take "comp time" as soon as it was available. McKinley testified, "I was told to work forty hours a week. Any overtime that I worked, that I should take off as soon as possible when it became available." Don Mackelprang and Tony Judd, both members of the town council at the time, confirmed this was the arrangement between McKinley and the town. McKinley began his employment with the town on January 3, 1977, and was continuously employed as town marshal until he resigned, effective in March of 1978.

At the first or second council meeting after McKinley started, he was told to keep track of his comp time. For numerous reasons detailed at trial, McKinley worked more than forty hours a week during most of his tenure as town marshal. McKinley testified he was never able to take comp time before he left his job. According to him there had to be somebody on duty to supervise and get the job done. Judd testified that he never realized how much comp time McKinley was accruing. McKinley kept track of his hours on his personal calendar and on a log he signed and turned in at the end of each day.

In July of 1977 McKinley and Judd, who acted as police commissioner, included in a proposed budget for the police department a pay raise for McKinley and a pay raise for his deputy. At a meeting shortly thereafter, the town council determined to give McKinley half the budgeted pay raise immediately and the remaining half in January of 1978. Later in 1977, however, the council determined it would give its employees pay raises only once each year in July, and that under this new raise policy McKinley could not receive a raise in January of 1978. At the same meeting, McKinley asked for and was granted two weeks vacation so that he could go to real estate school in Phoenix.

While McKinley was absent in Phoenix, the council adopted the following policy as reflected in its public minutes:

Comp/Overtime policy. Clerk checked with League of Cities and Towns concerning overtime and comp time. The league referred to Arizona Statute 23–392 concerning overtime and comp time for police Depts. This statute excludes police in an administrative capacity from comp time and overtime. Officers are not included in this statute except that they are eligible for overtime at time and one-half and comp time on a one-to-one ratio.

Officers will be paid authorized overtime if unable to take comp time. The Council wants the officers to take comp time immediately the next day and not accumulate hours. Maintenance men will be paid overtime for authorized overtime. The Clerks' job at this time is administrative. So the same procedure will hold true as the police administrative position. Tony Judd made a motion to accept this policy, seconded by Don Mackelprang, with all Council in favor.

When McKinley returned from Phoenix, he spoke to Tony Judd about the new policy. McKinley testified: ·

I asked Tony Judd why they were going take away my comp time after they said they would give it to me, and now here they are while I'm gone and they take it away from me. I asked him if he thought that was fair. He said, "Well, that's what the Council decided to do.' I says, 'Here you tell me that I am not going to get a pay raise and now you take my comp time away from me.' He says, "That is correct."

McKinley testified that after his comp time was taken away at the January 18 meeting, he began to work eight hours a day.

At the council's meeting on February 4, 1978, McKinley learned he would not be permitted to sell real estate because the council had determined this would constitute a conflict of interest. McKinley then tendered his resignation. He testified that he did so because of the problems with the pay raise, the refusal to let him sell real estate and because his comp time had been taken away. The council accepted McKinley's resignation. McKinley then sued to recover money for his accumulated comp time.

At the close of the evidence at trial both McKinley and the town moved for directed verdicts. The trial court directed a verdict in favor of the town. In explaining his ruling to the jury, the trial judge said:

Mr. McKinley, of course, filed this particular action, and under his complaint he is seeking to be reimbursed for what he claimed to be time-and-a-half owed to him for compensatory time that he accumulated.

The evidence has established that the plaintiff agreed to assume the position as Town Marshal for a stated salary. The agreement was that Mr. McKinley would receive compensatory time for hours spent on the job in excess of 40 hours per week in lieu of overtime pay.

The evidence obviously established that Mr. McKinley assumed these duties as Town Marshal in accordance with the agreement and he accumulated certain compensatory time.

The evidence also shows that during his employment Mr. McKinley did not take compensatory time off. He did not request it, he was not specifically refused it. He just didn't take it.

Mr. McKinley subsequently resigned his position, and in that regard there is no evidence of course that he was fired or that he was asked to resign or forced to resign. As a matter of fact, the Council tried to encourage him to stay on. This is not a situation of someone being fired from their job, this is a case where an individual determined to resign.

I have determined that when Mr. McKinley did resign it became impossible for the Town of Fredonia to perform its part of the agreement by giving him compensatory time off because the relationship terminated at the election of Mr. McKinley.

I have also determined and the evidence has established that actually the town was not given any opportunity to

perform its part of the bargain and did not breach the employment contract that existed between the parties.

Now, of course we could speculate as to what might have happened if Mr. McKinley had insisted upon compensatory time and stayed on the job and to the extent that he now claims compensatory time, but the fact is, he did not.

McKinley contends on appeal that A.R.S. § 23–392 and our decision in *Gilbert v. County of Mohave*, 133 Ariz. 209, 650 P.2d 511 (App.1982) mandate reversal in this case. We agree.

A.R.S. § 23–392 provides in pertinent part:

A. Any person engaged in law enforcement activities shall be compensated, for each hour worked in excess of forty hours in one work week, at the option of such employer either at a rate of:

(1) One and one-half times the regular rate at which he is employed; or

(2) One hour of compensatory time off in lieu of cash payment.

In *Gilbert* we held that a county policy that limited payment on termination to no more than eighty hours of accrued compensatory time was void under A.R.S. § 23–392(A). We noted in our opinion that the statute was enacted after our supreme court held in *State v. Boykin*, 112 Ariz. 109, 538 P.2d 383 (1975) [*Boykin* III], that although currently employed law enforcement personnel could be awarded compensatory time for overtime hours, law enforcement personnel no longer on the payroll could not recover pecuniary compensation for overtime absent legislative authorization. We stated:

Particularly in light of *Boykin* III, A.R.S. § 23–392 (Supp.1981) clearly reflects the legislature's desire to insure that law enforcement personnel receive compensation, either in the form of payment or compensatory leave, for overtime worked.

*Gilbert v. County of Mohave*, 133 Ariz. at 211, 650 P.2d at 513. We characterized A.R.S. § 23–392(A) as "an express statutory requirement that law enforcement personnel receive some form of compensation, including monetary compensation, for hours worked in excess of forty per week," and further stated:

The Arizona legislature has mandated that law enforcement personnel receive compensation for overtime worked. In the case of a terminating employee, where it is not possible to grant compensatory time, such employee must be paid at time and one-half.

133 Ariz. at 212, 650 P.2d at 514.

While it is true that *Gilbert* did not deal with a voluntary resignation, the legislative policy identified in that case applies with equal force whether the employee in question was discharged or voluntarily resigned.

The town informed McKinley initially that he could take compensatory time off and that the town could not pay him for overtime. As we noted in *Gilbert:*

[T]he statute requires that covered law enforcement personnel receive compensation for overtime work.

\* \* \* \* \* \*

The employer is given the option, however, of meeting that obligation either through payment of time and one half or the granting of compensatory time off.

133 Ariz. at 211, 650 P.2d at 513.

■ Since it is undisputed that when McKinley was hired it was understood that if he worked more than eight hours a day he would get comp time and not overtime pay, as the town had a right to specify under A.R.S. § 23–392, McKinley's decision to resign without taking his compensatory time arguably discharged the town's obligation to him as a matter of law. The strong legislative mandate we identified in *Gilbert* cannot be so casually avoided. Although the legislature allowed employers to choose the method by which they were to satisfy their obligation to compensate for overtime, we find no indication that it intended to allow them to choose not to satisfy that obligation at all. We think the legislature intended to grant employers the option to choose between compensatory time and overtime pay only in those cases in which an exercise of that option would in fact result in the payment of one or the

other form of compensation. That is not the situation under the circumstances presented in this case. Here, strict deference to the town's initial election of compensatory time would deny McKinley any recovery at all, and thereby wholly frustrate the legislature's intention that law enforcement personnel be compensated for the overtime they work.

█ As we noted above, McKinley and the town agreed that McKinley would work forty hours a week and take compensatory leave as soon as possible. In our view, this may be the equivalent of a permissible limitation on accrual of compensatory time. As we noted in *Gilbert*, such limitations are allowed. 133 Ariz. at 212 n. 2, 650 P.2d at 514 n. 2. For example, the Arizona State Personnel Board has adopted a rule, Ariz. Admin.R. & R. R2–5–601.K, which limits the amount of comp time that an employee can accrue, monitors its accrual and requires specific approval before comp time can be accumulated beyond certain levels. Such a regulation would have prevented exactly what appears to have happened in this case.

█ This case must be retried. It may be that a jury will find that McKinley either didn't accumulate the overtime he claims, or that he didn't really need to work overtime and thus was in breach of his agreement, or that he acted unreasonably in not taking comp time on a regular basis. The trier of fact may then eliminate or reduce McKinley's claim to the degree that any or all these issues are proven.

█ McKinley has requested the attorneys' fees he incurred on this appeal. Upon the submission of a proper request in conformance with *Schweiger v. China Doll Restaurant*, 138 Ariz. 183, 673 P.2d 927 (App.1983), we will set and award fees for appellate work.

The judgment is reversed and remanded for a new trial.

GREEN, J., concurs.

FROEB, Judge, dissenting:

I am unable to agree that this case is controlled by *Gilbert v. County of Mohave*, 133 Ariz. 209, 650 P.2d 511 (App.1982), since that case does not deal with a voluntary resignation from employment.

The contract of employment in this case required appellant to take compensatory leave for overtime hours worked in lieu of monetary compensation. When he resigned he made this impossible. He could not unilaterally convert his contract into one requiring employer to pay money for overtime worked.

The result would be different if the employer had made it impossible for appellant to take compensatory leave in satisfaction of his earned overtime, but that is not the situation here and the trial court was correct when it found insufficient evidence to sustain that contention.

I would affirm the directed verdict in favor of appellees.