666 P.2d 544

**ARROW LEASING CORPORATION, an Arizona corporation, Larry Spear and Beth Spear, his wife, Plaintiffs-Appellants,**

v.

**CUMMINS ARIZONA DIESEL, INC., an Arizona corporation, the Garrett Corporation, a California corporation, General GMC, Inc., a Delaware corporation; Paccar, Inc., d/b/a Peterbilt Motors Co., a foreign corporation, Defendants-Appellees.**

No. 1 CA–CIV 6455.

Court of Appeals of Arizona, Division 1, Department B.

June 28, 1983.

Porter, Kempton, Tobler & Gwilliam by Bernald C. Porter, Tempe, for plaintiffs-appellants.

Allen, McClennen & Fels, P.C. by Timothy J. Tweeton, Phoenix, for defendants-appellees.

OPINION

CONTRERAS, Judge.

The primary issue raised in this appeal is whether a plaintiff can recover under theories of strict liability in tort or negligence for the cost of repairing an engine which was damaged by an allegedly defective turbo-charger. In the context of the undisputed facts presented, we hold that there can be no recovery.

On December 24, 1975, Butler Trucking Company (Butler) purchased a Peterbilt tractor from General GMC, a retail truck-tractor dealer located in the Phoenix, Arizona, metropolitan area. The tractor was manufactured by Paccar, Inc., d/b/a Peterbilt Motors Company (Paccar) and had an engine and turbo-charger designed and manufactured by Cummins Arizona Diesel, Inc. (Cummins). At the time of purchase, Butler received Paccar's written warranty which expressly limits its applicability to the original purchaser.

In November 1976, Arrow Leasing Corporation (Arrow) purchased the used Peterbilt tractor from Butler and utilized it until approximately December 18, 1977. During

this time, Arrow had the tractor repaired and serviced both by its own employees and by independent mechanics. By December 18, 1977, the tractor had been in service for over 193,000 miles.

On November 20, 1979, Arrow filed a complaint in Maricopa County Superior Court against various defendants including Cummins and Paccar alleging that the tractor's turbo-charger had failed due to defective design causing damage to the turbocharger itself and to the engine. This damage necessitated repairing the engine at a cost of $9,781.13. In addition to seeking to recover the cost of repairs, Arrow also sought to recover lost profits resulting from its inability to use the tractor while the engine was being repaired. In its complaint, Arrow sought recovery on theories of (1) breach of warranty, (2) negligence and (3) strict liability in tort.

Paccar and Cummins subsequently filed motions for summary judgment which were granted by formal written order on January 27, 1982. Arrow has timely appealed from the judgment in favor of Paccar and Cummins. Other defendants named in the complaint are not parties to this appeal.

It is undisputed that Arrow was not the original purchaser and is not in direct privity of contract with either Paccar or Cummins. Accordingly, Arrow concedes that summary judgment was proper on its claim against these defendants for breach of warranty. *See Flory v. Silvercrest Industries, Inc.,* 129 Ariz. 574, 633 P.2d 383 (1981). However, Arrow contends that the trial court erred in granting summary judgment on its remaining claims. We are of the opinion that the damages sought by Arrow are solely for economic losses and are not recoverable pursuant to theories of strict tort liability or negligence. Therefore, we affirm the judgment of the trial court.

The tort law of products liability grew out of the contract cause of action for breach of warranty. Products liability law eventually evolved strict tort liability concepts whereby the ultimate consumer was able to recover against the manufacturer for personal injuries without the necessity of being in privity of contract. *See, e.g., MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916); *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). *See generally* Prosser, *The Assault Upon the Citidel,* 69 Yale L.J. 1099 (1960); Prosser, *The Fall of the Citadel,* 50 Minn.L.Rev. 791 (1966). The Arizona Supreme Court has approved the doctrine of strict liability in tort as found in the Restatement (Second) of Torts § 402(A) (1965). *See Reader v. General Motors Corp.,* 107 Ariz. 149, 483 P.2d 1388 (1971); *O.S. Stapely Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968). Our legislature likewise has embraced the concept of strict liability in tort. *See* A.R.S. §§ 12–681 to 686.

The imposition of liability on a manufacturer on behalf of a consumer without requiring privity of contract has expanded. from liability for personal injuries and any accompanying property damage to liability for property damage alone. There are three general types of harm which plaintiffs attempt to characterize as "property damage" for purposes of strict liability recovery: damage to property other than the defective product, damage to the defective product, and lost profits. *See Star Furniture Co. v. Pulaski Furniture Co.,* 297 S.E.2d 854, 857 (W.Va.1982).

■ Lost profits are clearly regarded as "economic losses" and are not recoverable within the context of a products liability lawsuit in Arizona and the majority of other jurisdictions. In *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 293, 640 P.2d 851, 855 (1982), our supreme court held:

Arizona case law has restricted the doctrine of strict liability in that purely commercial losses are not recoverable. *Beauchamp v. Wilson,* 21 Ariz.App. 14, 515 P.2d 41 (1973).

. . . .

We adhere to the rule enunciated in *Beauchamp.* Lost profits or lost opportunities are not recoverable under strict liability in tort. Therefore, . . . appellant could not claim lost profits under strict

liability. We further hold that damages to property are recoverable under strict liability in the absence of personal injury.

Arrow has apparently recognized that its claim for lost profits is an "economic loss" but nevertheless contends that it should be allowed to recover for the costs of repairing the engine of the tractor without being in privity with Paccar or Cummins under theories of strict tort liability or negligence.

■ In contrast to lost profits, damage to products other than the defective product is generally regarded as appropriate for a strict liability cause of action. *See, e.g., Cloud v. Kit Mfg. Co.,* 563 P.2d 248 (Alaska 1977); *Shields v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1974); *Star Furniture Co. v. Pulaski Furniture Co. See generally* W. Prosser, Law of Torts § 101 (4th ed. 1971). However, damage to the defective product itself creates difficult issues with respect to whether the harm is "property damage" or "economic loss." *Rocky Mountain Fire and Casualty Co.* implicitly permits recovery for the defective product if the product has been "damaged." However, it does not address the kind of harm to the product necessary to constitute "property damage."

■ The issue of first impression in this state raised by the instant appeal is whether damage to the product itself allegedly caused by a defective component part constitutes "property damage" or "economic loss." In addressing this issue, we recognize that the rationale for making a distinction is that traditional contract remedies are designed to redress loss of the benefit of the bargain while tort remedies are designed to protect the public from dangerous products.

In *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1172–73 (3rd Cir.1981), the Third Circuit Court of Appeals discussed this dichotomy as follows:

Although strict liability in tort developed out of the law of warranties, the courts of most states have recognized that the principles of warranty law remain the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function. [citation omitted.] These courts have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law.

. . . .

In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. In drawing this distinction, the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.

Similarly, in *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 74, 61 Ill.Dec. 746, 751, 435 N.E.2d 443, 448 (1982), the Illinois Supreme Court stated:

When an unreasonably dangerous defect is present, . . . , and physical injury does, in fact, result, then "[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them." [citations omitted]. This comports with the notion that the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved, i.e., when a product is unfit for its intended use. [citations omitted.]

*Accord Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280 (3d Cir.1980); *Northern Power & Eng. Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324 (Alaska 1981); *Cloud v. Kit Mfg. Co.; Russell v. Ford Motor Co.,* 281 Or. 587, 575 P.2d 1383 (1978); *Star Furniture Co. v. Pulaski Furniture Co.*

In *Cloud v. Kit Mfg. Co.,* 563 P.2d at 251, the Alaska Supreme Court in attempting to identify relevant factors for drawing the line between "economic loss" and "property damage" to a defective product stated:

> We cannot lay down an all inclusive rule to distinguish between the two categories; however, we note that sudden and calamitous damage will almost always result in direct property damage and that deterioration, internal breakage and depreciation will be considered economic loss.

The court later explained that "[t]here is nothing magical about the phrase 'sudden and calamitous'." We interpret this as merely an attempt to draw the line between tort law concerns with product safety and contract law concerns with economic expectations. *See Northern Power and Eng'g Corp. v. Caterpillar Tractor Co.,* 623 P.2d at 328.

■ Other jurisdictions have likewise attempted to draw lines for characterizing damages as "economic loss" or "property damage" emphasizing differences such as "physical harm" versus "reduction in value." *See Star Furniture Co. v. Pulaski Furniture Co.,* 297 S.E.2d at 859; *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d at 75, 61 Ill.Dec. at 752, 435 N.E.2d at 449. *But see* special concurrence of J. Simon in *Moorman,* 61 Ill.Dec. at 758, 435 N.E.2d at 455. We find the delineation of such factors helpful although, as recognized by these jurisdictions, they do not constitute all-inclusive rules. Each case must be considered on its own facts bearing in mind the purposes of tort law recovery as contrasted with contract law.

Facts analogous to the instant case were considered by the Alaska Supreme Court in *Northern Power and Eng'g Corp. v. Cater-*

*pillar Tractor Co.* Plaintiff sought recovery for damages to a diesel powered electric generator when the engine failed causing substantial damage to the generator. In concluding that the plaintiff could not recover pursuant to a theory of strict tort liability, the court stated:

> [A]ppellant alleges that the engine sustained damage as a result of a defective low oil pressure shutdown mechanism which failed to operate properly after an oil leak occurred. As a result of the engine running without sufficient oil, the engine overheated and seized. There is no evidence in the record that such a defect presented a danger to persons or other property and no evidence of violence, fire, collision with external objects, or other calamity as a result of this failure. The engine apparently just stopped operating.... [A]ppellant's loss is, therefore, entirely economic.

623 P.2d at 329–330.

■ Likewise, in the present case, Arrow complains only that the allegedly defective part resulted in damage to the engine necessitating repairs and the consequent loss of the use of the tractor-trailer. This is in essence a claim that the used tractor-trailer purchased by Arrow was equipped with an engine that failed to operate in the manner and for the time period which Arrow expected it to operate. It can most appropriately be described as a loss of the economic benefits Arrow anticipated as a result of its purchase, a harm which product liability law is not designed to redress.

Although not clearly raised on appeal by Arrow, we note that even if the defective product were characterized as the "turbocharger" and the engine was deemed "other property", we would not reach a different result. Again, we agree with the Alaska Supreme Court's reasoning in *Northern Power and Eng'g Corp.* when it stated:

> The only remaining question is whether the low oil pressure shutoff mechanism can be considered a component part which, due to defect, damaged another component part, the engine, so as to result in damage to "other" property of the

appellant. While we think this proposition may have some validity where the components are sold separately or are provided by different suppliers, we find no justification or support for such a rule where both components are provided by one supplier as part of a complete and integrated package. Since all but the very simplest of machines have component parts, such a broad holding would require a finding of "property damage" in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.

*Id.* at 330.

We also note that our conclusion that economic losses are best handled by contract law rather than tort law is applicable whether the theory involved is strict liability or negligence. While there are some cases allowing recovery in negligence for economic loss, the majority of cases and commentators hold to the contrary. *See Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d at 76–77, 61 Ill.Dec. at 753–754, N.E.2d at 450–451, and cases cited therein. *See generally* W. Prosser, Torts § 101 at 665 (4th ed. 1971); Note, *Economic Loss In Products Liability Jurisprudence,* 66 Colum. L.Rev. 917 (1966).

We further note that were we to permit recovery for economic losses under a negligence or strict liability theory, it would constitute an infringement upon the scheme provided by the Uniform Commercial Code. *See* A.R.S. §§ 44–2201 *et seq.* The Code allows parties to limit or eliminate warranty protections and to exclude or restrict remedies for consequential damages. *See* A.R.S. §§ 44–2333, –2334 and –2397. To allow such recoveries under tort theories would dilute, if not emasculate, the Code.

Based upon the foregoing, and in the context of the facts here presented, we affirm the judgment of the trial court.

FROEB and GREER, JJ., concur.