745 P.2d 986

Earl GOMULKA, Plaintiff-Appellant,

v.

YAVAPAI MACHINE AND AUTO PARTS, INC., an Arizona corporation, Defendant-Appellee.

No. 1 CA–CIV 9043.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 15, 1987.

Haralson, Kinerk & Morey, P.C. by Michael E. Larkin, Denneen L. Peterson, Tucson, for plaintiff-appellant.

Robbins & Green, P.A. by William Sandweg, III, Brian Imbornoni, Phoenix, for defendant-appellee.

KLEINSCHMIDT, Judge.

This is a products liability case. The plaintiff, Earl Gomulka, was injured while he was pouring gasoline into a sump, when the pilot light on a nearby steam cleaner ignited the gas fumes. He sued, among others, the company that sold the steam cleaner. He claimed that the steam cleaner was defective and that the seller was liable under theories of strict liability and negligence. The trial court granted summary judgment for the seller. We reverse.

The facts, in more detail, are these. Earl Gomulka had, just that day, started working as a mechanic at Al Crawford Motors. He was draining fuel from a tank into a "sump pit" that was located in a small room off the service area. Gasoline fumes traveled across the floor and were drawn into the pilot light of a gas-fired steam cleaner that sat on the floor in a corner of the room. The fumes ignited and "flashed back" to the container from which Gomulka was pouring and caused an explosion which severely burned him.

Gomulka had seen an object in the corner but did not recognize it as a steam cleaner. He had previously seen electric steam cleaners but had never seen one that was gas fired. He did not know that the cleaner had a continuously burning pilot light. Before the accident Gomulka believed that gasoline fumes were suspended in air, and he did not realize they would travel along the ground.

The steam cleaner was manufactured by Ewing Manufacturing Company, which is not a party to this appeal. Yavapai Machine, the appellee, is primarily involved in selling auto parts and in running a machine shop. It sold the steam cleaner to Al Crawford Motors, but it did not install, repair or service it. Yavapai Machine does not, nor could it, defend on the theory that it is a mere seller rather than a manufacturer. *See Wagner v. Coronet Hotel*, 10 Ariz.App. 296, 300–01, 458 P.2d 390, 394–95 (1969).

Gomulka's strict liability theory is that the steam cleaner was defective and unreasonably dangerous because it lacked devices to prevent flashback explosions, because it was not elevated to minimize the danger of flammable vapors being drawn to the pilot light, and because it bore no warnings that flammable materials should be kept away from it.

To counter the motion for summary judgment, Gomulka presented the affidavit of Alan Milner, Ph. D., an engineer and forensic expert on the ignition of flammable vapors by pilot lights and gas burners. Dr. Milner averred that the steam cleaner was designed to draw air for combustion from close to the floor in its immediate surroundings. He stated that the steam cleaner did not incorporate any device to prevent flammable vapor from being drawn into it and that it had no anti-flashback device. He said that he was aware of inexpensive safety devices to prevent flashbacks and that such devices have been in wide use for a long time. He was also aware of safety devices to prevent the induction of air from locations in which it was foreseeable that there would be flammable vapor. It was his opinion that the steam cleaner should have borne a warning that flammable materials should be kept away from it and that there should have been instructions to keep it elevated to prevent the induction of flammable vapors. In Dr. Milner's opinion the average consumer or user does not understand that gasoline fumes are heavier than air or that they run along the floor and can be sucked into a pilot light by the draft created by the operation of the steam cleaner. It was his opinion that the steam cleaner was defective and unreasonably dangerous.

Before we address the specific arguments of the parties, we will summarize the current state of products liability law. Our summary is derived from the Arizona Supreme Court's opinion in *Dart v. Wiebe Manufacturing, Inc.*, 147 Ariz. 242, 709 P.2d 876 (1985). Manufacturers and sellers of products may be liable for injuries caused by a product which is defectively manufactured or designed. A defectively

manufactured product is one that is flawed as a result of something that went wrong during the manufacturing process. A defectively designed product is one that is made as the manufacturer intended it to be but that is unreasonably dangerous. This case involves a design defect, not a manufacturing defect.

■ One test of whether a product is unreasonably dangerous is whether its inherent danger exceeds the expectation of the ordinary consumer. This "consumer expectation" test does not always apply, however, as when the consumer would have no expectation because he would have no knowledge of how safe the product could be made. When the consumer expectation test does not apply, courts employ a risk/benefit analysis to determine whether the product is unreasonably dangerous. This test calls for the fact finder to weigh factors such as these:

(1) the product's usefulness and desirability;

(2) the availability of safer products to meet the same need;

(3) the likelihood and probable seriousness of injury;

(4) the obviousness of the danger;

(5) common knowledge and normal public expectation of the danger (particularly for established products);

(6) the avoidability of injury by care in the use of the product (including the effect of instructions or warnings); and

(7) the manufacturer's or seller's ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

■ A *negligent* design case focuses on whether the defendant's conduct was reasonable in view of a foreseeable risk at the time of design of the product. A *strict liability* design defect case, where the risk/benefit analysis is appropriate, focuses on the quality of the product. To the extent the risk/benefit analysis involves a consideration of the conduct of the manufacturer or seller, such conduct is weighed

as if the risk that the trial has revealed has always been known. The fact finder is asked to employ a "hindsight test" to determine whether a reasonable manufacturer or seller who had knowledge of the product's potentially dangerous consequences, as demonstrated at trial, would continue to market the product. In other words, in strict liability cases, the knowledge of the risk attendant on a product's harmful characteristics is attributed to the manufacturer or seller as a matter of law. In such cases, it is immaterial whether the manufacturer knew or should have known of the risk accompanying a product's harmful characteristics at the time the product was put on the market. With this law in mind, we look first to the question whether the consumer expectation test should be applied to this case.

## APPLICATION OF THE CONSUMER EXPECTATION TEST

Under the consumer expectation test, a defective product is unreasonably dangerous when its inherent danger exceeds the expectation of the ordinary user or consumer. *Dart*, 147 Ariz. at 244, 709 P.2d at 878. To Gomulka, the steam cleaner was only an unknown object sitting in the corner of the room. Since he was not using the steam cleaner, had not purchased it, and was not interacting with it in any deliberate way, he was nothing but a bystander with respect to it. He had no expectations about the inherent danger of the machine.

■ The consumer expectation test does not apply to bystanders, at least in design defect cases, because a person who, like Gomulka in this case, is not using the product may be entirely ignorant of its properties and of how safe it could be made. *See Knitz v. Minster Mach. Co.*, 69 Ohio St.2d 460, 465, 432 N.E.2d 814, 818 (1982); Fischer, *Products Liability—The Meaning of Defect* 39 Mo.L.Rev. 339, 351 (1974); Montgomery & Owen, *Reflections on the Theory and Administration of Strict Tort Liability for Defective Products* 27 S.C.L.Rev. 803, 823 (1976).[1]

---

1. While this case does not raise the issue and we    do not decide it, the consumer expectation test

Our conclusion that the consumer expectation test does not apply in this case is bolstered by the fact that Dr. Milner's affidavit stated that the average consumer has no knowledge of the properties of gasoline fumes. Yavapai Machine argues that the consumer expectation test therefore fails to provide an adequate legal standard by which to test its liability in this case. We agree, because one who has no knowledge of the properties of gasoline fumes has no idea about how a product could be designed to minimize the risk of exploding such fumes.

## APPLICATION OF RISK/BENEFIT ANALYSIS

 The seller insists that Gomulka has no right, at this point, to argue that his case was appropriate for presentation to the fact finder on the basis of the theory of risk/benefit analysis because he never made any argument to that effect to the trial court. Indeed, it was only in the appellant's reply brief and at oral argument on appeal that the appellant shifted his position to urge that his case was predicated on a theory of risk/benefit analysis rather than a consumer expectation theory. There are, however, several reasons why the appellant should be permitted to shift his position and ask that the risk/benefit analysis now be applied to his claim. First, Gomulka developed the facts of his case as if the theory of risk/benefit analysis applied. His expert's affidavit speaks of the cost and availability of ways to make the device safer. Although Gomulka mislabeled his theory, he did present the factors which bear on the risk/benefit analysis for the trial court's consideration.

Second, we assume that Gomulka originally sought to proceed on a strict liability theory under the consumer expectation test because, otherwise, he would have been required to prove negligence under *Brady v. Melody Homes Manufacturer*, 121 Ariz. 253, 589 P.2d 896 (App.1979), a decision which *Dart* later overruled. Our courts have experienced difficulty in focusing the law of products liability, and we do not believe that Gomulka should be penalized

for any confusion that occurred in the trial court. The rule that matters not raised in the trial court should not be considered on appeal is procedural, rather than jurisdictional, and it is not controlling when the facts of a particular case warrant otherwise. *Stokes v. Stokes*, 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App.1984).

In the context of a risk/benefit analysis, Gomulka has presented enough in the affidavit of Dr. Milner to survive a motion for summary judgment. The affidavit is broadly drawn, but it clearly sets forth a basis for concluding that the steam cleaner was unreasonably dangerous. According to the affidavit, inexpensive safety devices are available to prevent flashback. Further, the affidavit states that the steam cleaner should have borne warnings that flammables should be kept away from it and that it should have been elevated off the floor. The trial court should not have granted summary judgment for the defendant. When this case is tried, it should go to the jury on instructions based upon the risk/benefit analysis only.

 We do not address Gomulka's contention that the motion for summary judgment should not have been granted on the issue of negligent design. If he cannot prove his case in strict liability, he cannot prove it in negligence either. This is true because if Gomulka were to proceed on a negligence theory he would have to prove everything he would need to prove under a strict liability theory plus he would have to prove that the defendant knew or should have known that the steam cleaner was unnecessarily dangerous. The count for negligence is therefore redundant. *See Dart*, 147 Ariz. at 246–47, 709 P.2d at 880–81; *Mather v. Caterpillar Tractor Corp.*, 23 Ariz.App. 409, 412, 533 P.2d 717, 720 (1975).

Reversed and remanded.

BROOKS and SHELLEY, JJ., concur.

may still apply to bystanders in manufacturing defect cases.