SOUTHWEST PET PRODUCTS, INC., an Arizona corporation; Earth Elements, Inc., dba Nature's Recipe Pet Foods, Plaintiffs–Appellants,

v.

KOCH INDUSTRIES, INC.; Koch Agriculture, Inc.; Koch Agri Services; Benson–Quinn Company; Harvest States Cooperative, Defendants–Appellees,

and

Wasatch Laboratories, Ltd., Defendant–Third Party Plaintiff–Appellee,

v.

Terra Tek, Inc., Third Party Defendant.

Southwest Pet Products, Inc., an Arizona corporation; Earth Elements, Inc., dba Nature's Recipe Pet Foods, Plaintiffs–Appellees,

v.

Koch Industries, Inc.; Koch Agriculture, Inc.; Koch Agri Services, Defendants–Appellants,

and

Benson–Quinn Company; Harvest States Cooperative, Defendants,

and

Wasatch Laboratories, Ltd., Defendant–Third Party Plaintiff,

v.

Terra Tek, Inc., Third Party Defendant.

Nos. 00–15930, 00–16015.
D.C. No. CV–95–02531–WGY.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2001.

Decided Feb. 8, 2002.

Before RONEY **, HUG and THOMAS, Circuit Judges.

MEMORANDUM ***

Southwest Pet Products, Inc. ("Southwest Pet") and Earth Elements, Inc.

** The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the

("Earth Elements") appeal the district court's dismissal of their tort claims against defendants as well as the district court's refusal to apply Arizona's "reasonable expectations" rule to Southwest Pet's contract claims. Koch Industries, Inc., Koch Agriculture, Inc., and Koch Agri Services (collectively "Koch") cross-appeal the district court's award of attorneys' fees to Southwest Pet on Southwest Pet's contract claims. We reverse in part, affirm in part, and remand. Because the parties are familiar with the factual and procedural history of this case, we will not recount it here.

## I

Because it did not "specifically and distinctly" argue in its opening brief for reversal of the district court's rulings on its indemnity claims and all tort claims other than its strict product liability claim, Southwest Pet has abandoned those claims. *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).[1] Thus, only the contract claims and strict product liability claim are before us on appeal.

## II

■ Although prior status as co-defendants does not automatically render collateral estoppel unavailable, *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 911 (9th Cir.1997), the district court's ruling that collateral estoppel did not apply in the instant case was nonetheless correct. When a different rule of law applies, the issue is not "identical" and collateral estoppel is not available. *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir.1971). Here, Arizona rather than California law applies, and the laws differ. *Compare Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 694 P.2d 198 (Ariz.1984), *with Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d 289, 204 Cal.Rptr. 736, 738–39 (Cal.Ct.App. 1984), *and Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal.App.3d 737, 127 Cal.Rptr. 838, 844–45 (Cal.Ct.App.1976). Because of the legal and factual differences between the cases, the district court also did not abuse its discretion in refusing to apply judicial estoppel.

## III

■ "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980). In doing so, federal courts are bound by the pronouncements of the state's highest court on applicable state law. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989). "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified*, 810 F.2d 1517 (9th Cir.1987). In assessing how a state's highest court would resolve a state law ques-

---

courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Accordingly, we grant Koch's motion to strike Section II.B (pages 28–30) of Southwest Pet's reply brief. However, we deny Koch and Harvest States Cooperative's motions to strike Section I.C (pages 24–25) of Southwest Pet's reply brief. This section addresses whether the claims were waived rather than presenting new arguments about the claims. We also deny Harvest States Cooperative's motion to strike Sections I.B.1 (pages 18–19) and I.A.5 (pages 17–18) of Southwest Pet's reply brief.

tion—absent controlling state authority—federal courts look to existing state law without predicting potential changes in that law. *Moore v. R.G. Indus., Inc.*, 789 F.2d 1326, 1327 (9th Cir.1986).

Southwest Pet and Earth Elements successfully stated a strict product liability claim under the three-factor test set forth by the Arizona Supreme Court in *Salt River*.

First, they alleged that the wheat was unreasonably dangerous because it contained vomitoxin, which makes dogs sick. *See Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 709 P.2d 876, 878 (Ariz.1985) (stating that an unreasonably dangerous product is one that is in "a 'condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him' ") (quoting Restatement (Second) of Torts § 402A (1965)); *Salt River*, 694 P.2d at 206–07. Even though Southwest Pet is not suing on behalf of the dogs or their owners, the damage it has alleged—contamination to other food ingredients and storage bags—is a result of the allegedly unreasonably dangerous defect.[2]

Second, the loss alleged by Southwest Pet did not occur in a sudden or accidental manner, and vomitoxin is not emitted or released slowly over time. However, "the manner in which loss occurs will not often be determinative." *Salt River*, 694 P.2d at 207. Further, "this portion of the analysis must be approached with a degree of circumspection, for adherence to the safety incentive policy of strict tort liability may demand that certain losses be recoverable in tort even though only the result, and not

the process, may be described as an accident or calamity." *Id.* Because this second factor is not satisfied in this case, the first and third factors weigh more heavily. *Id.* at 208.

Third, Southwest Pet and Earth Elements have alleged damaged to other property, consisting of Southwest Pet's storage bags and other ingredients it had purchased to make dog food.[3] Defendants argue that this other property was not "damaged" because the vomitoxin was merely distributed throughout the other ingredients during the manufacturing process, and thus remained a separate element of the finished product. In support of this argument, they cite cases about component parts. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867–72, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *King v. Hilton–Davis*, 855 F.2d 1047, 1052–54 (3d Cir.1988); *Arrow Leasing Corp. v. Cummins Ariz. Diesel, Inc.*, 136 Ariz. 444, 666 P.2d 544, 548–49 (Ariz.Ct.App.1983).

However, these component part cases are inapposite. Southwest Pet did not buy a product that was damaged because one of its component parts was defective. Instead, when Southwest Pet used the product it had purchased, feed wheat, to manufacture another product, dog food, the feed wheat caused damage to other property owned by Southwest Pet. The other cereals and storage bags were damaged because separating the vomitoxin-infested wheat from the other ingredients was impossible after the ingredients were combined, and thus the other ingredients could not be used for any purpose. *See general-*

---

**2.** The final determination as to whether this defect is in fact an "unreasonably dangerous" defect will be made by the trier of fact. *Dart,* 709 P.2d at 878 n. 1.

**3.** Southwest Pet's allegation that the delivered wheat itself was defective is irrelevant be-

cause, under *Salt River,* loss of the defective product itself is only actionable on a strict product liability theory when the loss occurs in a sudden, accidental manner, which did not occur here. *See* 694 P.2d at 209.

*ly Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.,* 78 Cal.App.4th 847, 93 Cal.Rptr.2d 364, 376–77 (Cal.Ct.App.2000) (holding that a manufacturer of cereal suffered property damage under its insurance contract when it combined almonds it had purchased, that were full of wood splinters, with other ingredients to make cereal).

■ The component part rule applies to relieve a manufacturer from strict liability in a situation where the purchaser seeks to recover for damage from a defect in the manufacturer's component part that it sold to the purchaser, when the damage is only to that component part. It does not apply to a situation where the defect in the manufacturer's component part causes damage to the purchaser's other property.

Thus, Southwest Pet and Earth Elements have alleged that the wheat Southwest Pet purchased .was unreasonably dangerous and damaged Southwest Pet's other property on account of the defect that rendered the wheat unreasonably dangerous. This claim is analogous to the second hypothetical posited by the *Salt River* court, *see* 694 P.2d at 208, and Southwest Pet and Earth Elements therefore have successfully stated a claim in tort. Accordingly, the district court's dismissal of the strict product liability claim must be reversed.

### IV

■ The district court was correct, however, to hold that, as a matter of law, Arizona's "reasonable expectations" exception to the enforcement of contractual provisions does not relieve Southwest Pet from the Sale Confirmation form disclaimers. Whether the exception is available is a question of fact, but only if the party asserting it has presented (1) some evidence that it was not aware of the form terms and (2) evidence from which reasonable people might conclude that the party reasonably did not expect that the contract included the form terms. *See Servs. Holding Co. v. Transamerica Occidental Life Ins. Co.,* 180 Ariz. 198, 883 P.2d 435, 441–43 (Ariz.Ct.App.1994).

Assuming Arizona would apply the exception to contracts governed by the Uniform Commercial Code, such as the contract at issue here, Southwest Pet did not present sufficient evidence to survive summary judgment. It is undisputed that Southwest Pet received and signed at least some forms from Koch with the terms on the front, not the back, in the past; such actions would not suggest to a reasonable person that Southwest Pet disagreed with those terms. Although the terms on the back are small, they are not illegible; the important phrases are in capital letters and bold face type; and the form is one page rather than "book length." *Cf. Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388, 391 (Ariz.1984). More significantly, Southwest Pet did not tender any evidence that Koch made representations conflicting with the terms on the back of the form. Given the undisputed record, the district court's ruling that, as a matter of law, the exception does not apply was entirely proper.

### V

As this case must be remanded for further proceedings on the strict product liability claim, the district court's award of attorneys' fees is premature and must be vacated.

Each party shall bear its own costs.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**